**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**HARI COHLY**                                                                    **PLAINTIFF**

**vs.**                                                    **CIVIL ACTION No.: 3:22-CV-332-HTW-LGI**

**MISSISSIPPI INSTITUTIONS OF**
**HIGHER LEARNING, JACKSON**
**STATE UNIVERSITY, WILLIAM B.**
**BYNUM, JR., LINDA BROWN-WRIGHT,**
**WILBUR WALTERS, JR., RAMZI M.**
**KAFOURY, and RICHARD A. ALO**                              **DEFENDANTS**

---

**ORDER**

---

Dr. Hari Cohly was an associate professor at Jackson State University ("JSU"), who was terminated after an extensive personnel investigation and hearing process that began in 2015 and concluded in 2018. Disagreeing with Defendant JSU's decision, affirmed by Defendant Mississippi Institutions of Higher Learning, to terminate his employment, Dr. Cohly has undertaken this lawsuit. Critical of his lawsuit, the Defendants, in unison, assert that Dr. Cohly's legal claims are time-barred and, in any event, his dissatisfaction with JSU's personnel decision does not support his claims for constitutional due process violations[1], breach of contract[2], or tortious interference with contract[3].

---

[1] Dr. Cohly asserts a claim for denial of due process under 42 U.S.C. §1983, which states, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..." 42 U.S.C.A. § 1983 (West).

[2] Dr. Cohly pleads that JSU breached his employment contract by terminating his employment "without cause and without any substantive evidence of cause for termination." [See Docket no. 1-1]

[3] Dr. Cohly seeks, as damages, punitive as well as compensatory damages because, claims Dr. Cohly, certain pf the Defendants' actions constituted intentional and malicious interference with his employment contract with JSU.

Attempting to breathe legal muscle into their juridical stance, Defendants now have before this court their Motion to Dismiss **[Docket no. 3],** based upon the following theories: (a) applicable statutes of limitations; (b) qualified immunity; and/or (3) failure adequately to state any claim for relief.  Dr. Cohly opposes the Defendants' Motion.

## I.   <u>JURISDICTION</u>

To proceed, this court must be afforded subject matter jurisdiction, which, in federal court, owes its existence principally to Title 28 U.S.C. § 1332[4], diversity of citizenship, or § 1331[5] , federal question. Different factors serve as the requisite bedrock for each.

This lawsuit is structured on §1331. Dr. Cohly relies upon, *inter alia*, federal causes of action, namely violations of  the Due Process Clause of Fourteenth Amendment to the United States Constitution[6] and 42 U.S.C. § 1983[7], for success on his claims. When a Plaintiff chooses

---

[4] 28 U.S.C. § 1332 states:

(a)      The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—

(1)      Citizens of different States; …

[5] 28 U.S.C. § 1331 states:
    The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[6] The Due Process Clause of the Fourteenth Amendment states:
 No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV

[7] Title 42 USC § 1983 states, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... 42 U.S.C.A. § 1983 (West)

the Constitution of the United States or any other federal entitlement statutes for relief, the

federal district court has federal question jurisdiction, as here.

## II.  FACTUAL AND PROCEDURAL HISTORY

Dr. Hari Cohly was employed by JSU as an Associate Professor in the Biology Department.

In 2015, Dr. Ramzi Kafoury, the Chair of the Biology Department, filed, with his supervisor, Dr.

Richard Alo, Dean of the College of Science, Engineering and Technology, a critical report

accusing Dr. Cohly of engaging in unauthorized research in the laboratory located in the Plant

Science Building. Dr. Kafoury stated that he had been informed that Dr. Cohly's research involved

human bodily fluid (urine), and, contrary to the Department rules, Dr. Cohly had not submitted an

application seeking approval from the Institutional Revenue Board ("IRB"). Research of this type

supposedly had to be approved beforehand by the IRB. This Board was "designated to approve,

monitor, and review biomedical and behavioral research involving humans."

Dr. Kafoury, in his report, further informed the Dean that Dr. Cohly had been "involving

students in this unauthorized research activity."  Further, he said, that Dr. Cohly "had been granting

access to unauthorized individuals not affiliated with the Department of Biology or Jackson State

University, and at after hours."

Dr. Kafoury immediately suspended Cohly's research and laboratory access privileges.

JSU then placed Dr. Cohly "on administrative leave (with pay) pending a fact finding

investigation." JSU informed Dr. Cohly that because he would "remain in a paid status during this

administrative leave," the University's rules and policies would continue to apply to him. Dr.

Cohly was further instructed that while on administrative leave, he was not to be on campus, or to

interact with students unless he notified and coordinated his presence through JSU's Department

of Human Resources.

Following an investigation into Dr. Cohly's alleged research activities, Dr. Kafoury subsequently recommended that the University terminate Dr. Cohly for his failure "to obtain [IRB] and Institutional Biosafety Committee approval for research conducted at JSU."

Dr. Kafoury informed Dr. Cohly of his recommendation, and offered Dr. Cohly an opportunity to request a hearing before the Faculty Review Committee prior to the recommendation being forwarded to the President of JSU for consideration.

Dr. Cohly thereafter requested this hearing before the Faculty Review Committee. Though delayed for various reasons attributable both to Dr. Cohly and JSU, Dr. Cohly remained for years on paid administrative leave until the hearing was held.

At the hearing, held on April 19, 2018, Dr. Kafoury and Dean Alo testified that Dr. Cohly had admitted to conducting research on human urine without obtaining the necessary IRB approval. Dr. Cohly denied that he had made such an admission.

The Faculty Committee made its decision, by a vote of five to four. That Committee found in favor of Dr. Cohly and sustained his contention that he had not been conducting research for which IRB approval was required. IRB recommended that he not be terminated.

Their recommendation, along with that of Dr. Kafoury, subsequently were submitted to then-JSU President, Dr. William Bynum. He says he considered the Faculty Committee's finding, but that he ultimately decided to accept the recommendation of Dr. Cohly's immediate supervisor, Dr. Kafoury.

 On August 2, 2018, Dr. Bynum notified Dr. Cohly that because Dr. Bynum was "accept[ing] the recommendation of the Interim Dean of the College of Science Engineering and Technology to terminate [Dr. Cohly's] employment with Jackson State University," "[This]

request to terminate [Dr. Cohly] for cause [would] be submitted to the [IHL Board] for review and final approval, during its next [business] meeting scheduled for October 18, 2018."

Dissatisfied with Dr. Bynum's decision, Dr. Cohly alleges he asked the Board of Trustees for Mississippi Institutions of Higher Learning (the "IHL Board") to review JSU's decision to terminate him. The Board voted to deny Dr. Cohly's request for Board review and approved his termination.

In August of 2019, Dr. Cohly had filed an almost identical suit before this same Court, asking the court to re-litigate the merits of JSU's personnel decision. See *Cohly v. Jackson State University, et al.*, 3:19-cv-597-HTW-LRA. In response to Defendants'[8] original Motion to Dismiss [Doc. 18], Dr. Cohly filed a Notice of Voluntary Dismissal without Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)[9]. [Doc. 21].

More than a year later, on March 28, 2022, Cohly re-filed the Complaint *sub judice* in state court, asserting essentially identical claims against the same Defendants. On June 15, 2022, Defendants removed this matter from state court to this federal forum, based on federal question jurisdiction.

### III.   STANDARD OF LAW

Rule 12(b)(6) authorizes a federal district court to dismiss a lawsuit before it for failure to state a claim. "To avoid dismissal, 'a complaint must contain sufficient factual matter, accepted as

---

[8] That lawsuit featured the same parties as case before this court *sub judice.*

[9] (a) Voluntary Dismissal.
    (1) *By the Plaintiff.*
        (A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
            (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
Fed. R. Civ. P. 41

true, which state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570 (internal quotation omitted). In making this determination, courts accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court, however, cannot accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); see also *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

## IV.   HOLDING

### A.   *The Statute of Limitations*

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Wooten v. Smith*, No. 1:19-CV-340-KS-MTP, 2020 U.S. Dist. LEXIS 63833, at *9 (S.D. Miss. Apr. 13, 2020)) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Dr. Cohly brings claims for an alleged due process deprivation under 42 U.S.C. § 1983; breach of contract; and intentional interference with contract. Each of these claims carries a three-year statute of limitations. *Lewis v. Loftin*, No. 3:17-CV-00180-NBB-RP, 2019 U.S. Dist. LEXIS 69877, at *9 (N.D. Miss. Apr. 25, 2019) (breach of contract claim subject to three-year limitations period under Miss. Code Ann. § 15-1-49[10]); *Wooten v. Smith*, No. 1:19-CV-340-KSMTP, 2020 U.S. Dist.

---

[10] (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

LEXIS 63833, at *9 (S.D. Miss. Apr. 13, 2020) (Section 1983 claim governed by Mississippi's three-year personal-injury limitations period); *Sun State Oil, Inc. v. Suman Pahwa*, No. 3:18-CV-619-DPJ-FKB, 2019 U.S. Dist. LEXIS 3018, at *4-5 (S.D. Miss. Jan. 8, 2019) (intentional interference with contract claim subject to three-year limitations period).

   For claims based on an alleged adverse employment action, such as Dr. Cohly's, the clock begins to run when the plaintiff has notice of the facts giving rise to his claims. *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987) (finding that statute for due process claim based on termination of employment began running when plaintiff was informed of termination); *Wallace v. Greenville Pub. Sch. Dist*., 142 So. 3d 1104 (Miss. App. 2014) (cause of action for breach of contract accrued at the time of notice of termination of employment, not on the effective date of termination.); *Mills v. Sierra Club,* 2005 U.S. Dist. LEXIS 63427, *3-4 (S.D. Miss. Oct. 27, 2005) (finding that tortious interference claim accrued on date plaintiff learned of alleged tortious act). Where the plaintiff has knowledge of those facts, an "employee's use of an employer's internal grievance procedure does not toll a statute of limitations." *Morgan v. Potter*, 2010 U.S. Dist. LEXIS 132240, *15 (S.D. Miss. Dec. 14, 2010) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261, 101 S. Ct. 498 (1980)).

   Moreover, "[i]f a plaintiff voluntarily dismisses an action without prejudice, it is considered that the suit had never been filed." *Estate of Gray v. Dalton,* 2015 U.S. Dist. LEXIS 77283, *5 (N.D. Miss. Jun. 9, 2015) (quoting *Ford v. Sharp*, 758 F.2d 1018, 1023-1024 (5th Cir. 1985)). Accordingly, "[f]or purposes of the statute of limitations, the plaintiff receives no credit or tolling for the time that elapsed during the pendency of the original suit." *Id*. Moreover, "a court

---

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions

Miss. Code. Ann. § 15-1-49 (West)

may not reinstate a suit after a voluntary dismissal if the statute of limitations has run in the interim. Id.; see also *Taylor v. Bunge Corp.*, 775 F.2d 617, 619 (5th Cir. 1985); *Peterson v. United Capital Fin. Advisors*, 2017 U.S. Dist. LEXIS 52951, *4 (N.D. Tex. Mar. 8, 2017). *Samples v. Healthcare*, 2008 U.S. Dist. LEXIS 136173, *6 (N.D. Miss. Jul. 23, 2008).

Here, Dr. Cohly knew of the facts giving rise to his claims almost four years ago, when he was notified by then-President Bynum on August 2, 2018, that Dr. Bynum had decided to "accept the recommendation of the Interim Dean of the College of Science, Engineering and Technology and to terminate [Dr. Cohly's] employment with Jackson State University," and that his requested termination would be submitted to the IHL Board for review and final approval at the Board's next scheduled business meeting on October 18, 2018. Compl. at ¶ 27; see also Ex. "E" to Motion to Dismiss (Ltr. fr. W. Bynum to H. Cohly dated Aug. 2, 2018). Dr. Cohly's failure to file his suit before the expiration of the applicable statutes of limitations is clear from on the face of his pleading, and his claims should be dismissed with prejudice.

### B. *Procedural Due Process*

"The Due Process Clause of the Fourteenth Amendment[11] is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350 (1976). It protects only against deprivations of constitutionally-protected property or liberty interests. *Depree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009); *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006). Here, Dr. Cohly has not alleged the deprivation of any constitutionally-protected interest, whether based on a property interest or liberty interest.

Where a public employee has a protected property interest, he is entitled to "notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to

---

[11] See Footnote 6.

present his side of the story." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995). The essential requirements "are notice and an opportunity to respond." *Finch v. Fort Bend Ind. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003).

Here, Dr. Cohly first claims that he was denied procedural due process when he was placed on administrative leave pending a hearing, asserting that "[t]he Defendants denied Dr. Cohly procedural due process and deprived him of his Fourteenth Amendment rights by delaying his initial hearing before the University Faculty Personnel Committee for over three years." Compl. p. 7, ¶ 40. But as courts have consistently held, "a person's placement on administrative leave does not amount to a deprivation of a protected property interest." See *Brokaw v. Dallas Ind. Sch. Dist.*, 2008 U.S. Dist. LEXIS 70518, *21 (N.D. Tex. Sept. 11, 2008); see also *Cleveland v Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46, 105 S. Ct. 1487 (1985) (observing that a public employer can avoid constitutional due process issue by suspending a public employee with pay); see also *Kermode v. Univ. of Miss. Med. Cntr.*, 2011 U.S. Dist. LEXIS 105082, *17 (S.D. Miss. Sept. 15, 2011) ("Separation with pay is not the same as termination."). Accordingly, Dr. Cohly's placement on administrative leave is insufficient to support his claim that he was denied a constitutionally-protected property interest without procedural due process.

Dr. Cohly next says  that he was deprived of notice and an opportunity to be heard prior to JSU's decision. His own pleadings contradict this assertion. He pleads that on May 8, 2015, he was provided notice that his termination was being recommended on the basis of his "failure to obtain Institutional Review Board and Biosafety Committee approval for research [he was] conducting at Jackson State University." Compl. ¶ 20, p. 4. He further pleads that he requested and was granted a hearing before the University Faculty Personnel Committee, at which Dr. Kafoury and Dr. Alo testified regarding the allegations against Dr. Cohly. According to Dr. Cohly, despite

the Faculty Personnel Committee's recommendation, President Bynum decided to accept the chair's recommendation to terminate Cohly's employment.

Based, then, on Dr. Cohly's own allegations, he received notice of the allegations against him, an explanation of the evidence, and an opportunity to respond. Dr. Cohly's own construction of the facts  thus reveal that he was provided all the process to which he was due.

### C.  Deprivation of Constitutionally-Protected Liberty Interest

Dr. Cohly offers little in support of his purported liberty interest claim, stating only that he suffered "financial, reputational, and emotional harm" as a result of the "Defendants' actions." Dr. Cohly, however, ignores jurisprudence that "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." *Finch,* 333 F.3d 555, 561 n.3 (5th Cir. 2003); *see also Wells v. Hico Ind. Sch. Dist*., 736 F.2d 243, 256 (5th Cir. 1984) ("reputation alone [is not] a constitutionally protected interest.").

For an actionable liberty interest deprivation, Dr. Cohly must allege that: 1) he was discharged, 2) stigmatizing charges were made against him in connection with the discharge, 3) the charges were false, 4) he was not provided notice nor an opportunity to be heard before his discharge, 5) the charges were made public, 6) he requested a hearing to clear his name, and 7) the employer refused his request for a hearing. *Yul Chu v. Miss. St. Univ.*, 592 F. App'x 260, 268 (5th Cir. 2014).

Here, Dr. Cohly does not allege that any stigmatizing charges were made against him in connection with his discharge, that Dr. Kafoury's assertion that Cohly had not obtained IRB approval was false, that he was not provided notice or an opportunity to be heard before his discharge, that the charges were made public, or that he requested a hearing to clear his name. On

10

the other hand, he affirmatively pleads that he received a letter stating the reasons for his proposed termination and that he was granted a hearing before the Faculty Review Committee and allowed to present his own evidence. Dr. Cohly's allegations are insufficient to state a liberty interest claim.

### D.  Substantive Due Process

Dr. Cohly seems to suggest a violation of his substantive due process rights, claiming that he was terminated "without any substantive evidence that would support a termination for cause." Compl. p. 7. The substantive component of the Due Process Clause bars certain arbitrary government actions, even if [those actions'] procedural implementation is sufficient. *Salcido v. Univ. of S. Miss.*, 2013 U.S. Dist. LEXIS 75191, *26 (S.D. Miss. May 29, 2013), Dismukes v. Hackathorn, 802 F. Supp. 1442, 1447 (N.D. Miss. 1992). "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest." *Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993).

"In determining whether the government's action has been arbitrary in the constitutional sense, the Court asks whether the government action '**shocks the conscience**.'" *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 548 (W.D. La. 2016) (emphasis added). Only the "most egregious official conduct" is arbitrary in the constitutional sense. *Hess v. Bd. of Trustees of S. Ill. Univ.*, 149 F. Supp. 3d 1027, 1044 (S.D. Ill. 2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997)). This high bar recognizes that "federal court is usually 'not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.'" *McMullen v. Starkville Oktibbeha Consol. Sch. Dist.*, 200 F. Supp. 3d 649, 659 (N.D. Miss. 2016) (quoting *Jones v. La. Bd. of Sup'rs of Univ. of La. Sys.*, 809 F.3d 231, 240 (5th Cir. 2015)).

11

Dr. Cohly fails to allege any inadequacies in his termination process that would shock the judicial conscience. Cohly's own allegations reveal that he was terminated only after an initial recommendation and investigation and a formal hearing process. Cohly attacks JSU's decision to terminate him, but he includes no fact allegations of "most egregious official conduct" and his mere disagreement with JSU's personnel decision is insufficient to support a substantive due process claim.

## V.     <u>QUALIFIED IMMUNITY</u>

Even if Dr. Cohly has somehow alleged a colorable constitutional violation, each of the Individual Defendants sued in his individual capacity is entitled to qualified immunity. Designed to protect "all but the plainly incompetent or those who knowingly violate the law," the qualified immunity defense "requires courts to enter judgment in favor of a government employee unless the employee's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morse v. Frederick*, 551 U.S. 393, 429 (2007) (Breyer, J., concurring in part and dissenting in part) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Where a defendant in a § 1983 suit pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to establish that the alleged conduct violates clearly-established law. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (citing *Thompson v. Upshur County, TX*, 245 F.3d 447, 456 (5th Cir. 2001).

The question of qualified immunity is to be determined as a matter of law and requires a conduct-based inquiry, not an abstract legal or factual inquiry. E.g., *Elder v. Holloway*, 510 U.S. 510, 515-16 (1994); *Wood*, 134 S.Ct. at 2067. A plaintiff must meet a heightened pleading requirement – he must allege specific conduct giving rise to a constitutional violation, and he may not rely on mere conclusory allegations. *Wicks v. Miss. St. Employment Servcs.*, 41 F.3d 991, 994-

95 (5th Cir. 1995); *King v. Lawrence County Bd. of Educ*., 2:12-CV-68, 2013 WL 319286, at *2 (S.D. Miss. Jan. 28, 2013). The pleading must describe conduct "**clear to a reasonable officer that his conduct was unlawful in the situation he confronted.**" *Wood v. Moss*, 134 S.Ct. 2056, 2067 (2014) (emphasis added); *Ashcroft*, 131 S.Ct. at 2083; *Stauffer*, 741 F.3d at 583-84.

To disprove the applicability of qualified immunity, a plaintiff must satisfy a two-pronged test. *Marquez v. Garnett,* 567 F. App'x 214, 216 (5th Cir. 2014). At the dismissal stage, the court must determine whether the facts alleged make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If so, the issue becomes objective legal reasonableness, and the court must decide whether the right at question was clearly-established at the time of defendant's alleged misconduct. *Id*.; *Baker v. Pound*, 75 F.3d 190, 198 (5th Cir. 1996). To be "clearly established", the plaintiff must point to controlling authority or a "robust consensus of cases of persuasive authority" that placed some constitutional question faced by the Individual defendants "beyond debate." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014); *Ashcroft v. alKidd*, 563 U.S. 731, 741-42, 746 (2011).

Dr. Cohly has failed to show that any of the individual Defendants violated his constitutional rights, much less clearly established constitutional law.

### A. *College of Science, Engineering and Technology Interim Dean Wilbur Walters, Jr.*

 Dr. Cohly's allegations against Dr. Walters are few. Aside from serving as the Interim Dean of the College of Science, Engineering, and Technology at the time of Dr. Cohly's termination, the pleadings fail to establish what role, if any, Dr. Walters is alleged to have played in Dr. Cohly's perceived due process violations. Dr. Cohly apparently takes issue with Dr. Walters because President Bynum chose to "accept the recommendation of the Interim Dean of the College of Science, Engineering and Technology to terminate [his] employment with Jackson State

University," and Dr. Walters "was the Interim Dean of [he College of Science, Engineering and Technology] at that time." According to Dr. Cohly, neither Dr. Walters nor President Bynum "had substantive evidence that Dr. Cohly failed to obtain IRB approval for any research requiring such approval" or "had substantive evidence of any reason to terminate Dr. Cohly for cause."

Dr. Cohly, however, has completely failed to articulate how Dr. Walters deprived Dr. Cohly of constitutional rights, or how merely acting as the Interim Dean of at the College of Science, Engineering and Technology at the time of Dr. Cohly's recommended termination was sufficient to give rise to Dr. Walter's individual liability.

### B.   College of Science, Engineering and Technology Dean Richard A. Alo

Dr. Cohly's allegations against Dr. Alo are similarly weak. As to Dr. Alo, Dr. Cohly pleads only that JSU placed Dr. Cohly on administrative leave upon the recommendation of Dr. Alo, that Dr. Alo's "initiation of the investigation and recommendation that Dr. Cohly be placed on administrative leave was based on charges asserted by the Defendant Dr. Kafoury," and that Dr. Cohly received no notification of "Dr. Kafoury's and Dr. Alo's charges of misconduct and investigation despite JSU's policies and procedures requiring written notice of such charges to tenured professors." According to Dr. Cohly, neither "Dr. Kafoury nor Dr. Alo had substantive evidence that Dr. Cohly failed to obtain approval for any research requiring such approval," and at the faculty hearing Dr. Alo "alleged that Dr. Cohly [had] admitted to performing unauthorized research without IRB approval."

Dr. Cohly completely fails to tie those allegations to his due process claims, however, and it is unclear how any such alleged actions would establish that Dr. Alo violated Dr. Cohly's clearly-established constitutional rights. Dr. Alo's alleged involvement in recommending that Dr. Cohly

be placed on administrative leave is insufficient, as placement on administrative leave does not constitute a deprivation of any constitutionally-protected property interest.

Finally, Dr. Cohly himself alleges that he received constitutional notice of the allegations against him, and whether he received other notice consistent with "JSU's policies and procedures requiring written notice of such charges to tenured professors" is immaterial to his constitutional claim. Accordingly, this court finds that Dr. Cohly has failed to allege any facts tending to show that Dr. Alo violated Dr. Cohly's clearly-established constitutional rights. Dr. Alto is dismissed as a Defendant.

### C.  Biology Interim Chair Ramzi M. Kafoury

Dr. Cohly again fails to tie his fact allegations to his alleged deprivation of due process claim, but his grievances against Dr. Kafoury seem to all stem from Dr. Kafoury's termination recommendation. As Dr. Cohly also pleads, however, Dr. Kafoury did not make the ultimate decision regarding whether Dr. Cohly would be terminated. Accordingly, as with Dr. Alo and Dr. Walters, it is unclear how or why Plaintiff contends Dr. Kafoury could be held individually liable for that decision. Dr. Cohly has failed to allege that Dr. Kafoury individually violated Cohly's clearly-established constitutional rights, and Dr. Kafoury is therefore entitled to qualified immunity.

### D.  Dr. William B. Bynum, Jr.

Dr. Cohly alleges that Dr. Bynum decided to terminate him, but he still fails to include any fact allegations as to how Dr. Bynum could have deprived him of a constitutionally-protected interest. Dr. Cohly's due process averment states only that the Defendants somehow collectively violated his due process rights "by allowing Dr. Bynum to reject the findings of the University Faculty Personnel Committee and override its recommendation to reinstate Dr. Cohly without a

15

further hearing and without any substantive evidence," that President Bynum did not have "substantive evidence that Dr. Cohly had failed to obtain IRB approval for any research requiring such approval," and did not have "substantive evidence of any reason to terminate Dr. Cohly for cause."

As set forth above, in the context of public employment, a public employee is entitled to notice and an opportunity to respond before being discharged. *Finch*, 333 F.3d at 562. Contrary to Cohly's conclusory allegations aimed at Dr. Bynum, Dr. Cohly alleges that he received notice of the charges that he had conducted research without approval, that Dr. Kafoury and Dr. Alo testified at the faculty hearing that Dr. Cohly had admitted to conducting such research without approval, and that Dr. Cohly had put on his own proof in response to that allegation and denied that he had admitted to such unapproved research activity. Accordingly, Cohly's own allegations establish that he was given the process guaranteed by the Due Process Clause, but that it did not result in his preferred outcome. The constitution does not guarantee public employees a particular outcome, however, and Dr. Cohly has failed to establish that Dr. Bynum violated his clearly established constitutional rights by disagreeing with Dr. Cohly's own view of the evidence following a full hearing process. See, e.g., *Jackson v. Pierre*, 2019 U.S. Dist. LEXIS 1666292, *16 (M.D. La. Sept. 27, 2019) ("Therefore, Jackson does not state a claim that she lacked a 'meaningful' opportunity to be heard, because her own allegations demonstrate that she was, in fact, heard, and, in her own estimation, 'proved' what she set out to prove. It is somewhat puzzling for Jackson to argue that she was unable to meaningfully respond to the charges against her due to some perceived deficiency in the notice that she received, while simultaneously pleading that she presented testimony that effectively rebutted those charges."). Dr. Cohly fails to allege any facts showing

that Dr. Bynum violated any of Dr. Cohly's clearly-established constitutional rights. Dr. Bynum, therefore, is entitled to qualified immunity.

## VI.    TORTIOUS INTERFERENCE

In order to state a claim for tortious interference with contract, the plaintiff must plead: 1) the acts were intentional and willful; 2) they were calculated to cause damage to the plaintiff in a plaintiff's lawful business; 3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and 4) actual loss occurred. *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 726 (S.D. Miss. 214); see also Par Industries, Inc. v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998), *Jones v. Miss. Inst. of Higher Learning*, 2018 Miss. App. LEXIS 378, *34 (Miss. Ct. App. 2018).

"It is essential both to aver and prove the defendant's knowledge of the contract in question," and "[s]uch knowledge is not pleaded sufficiently by a mere allegation that [the defendant] maliciously prevented performance of the contract." *J. T. Shannon Lumber Co. v. Gilco Lumber, Inc*., 2010 U.S. Dist. LEXIS 3811, *22 (N.D. Miss. Jan. 15, 2010). Moreover, in the employment context, "conduct related to a legitimate, employment-related objective constitutes justifiable acts, which cannot 'give rise to an inference of malice' for the purpose of maintaining a tortious interference with contract claim." *Id*. (internal quotation omitted); *see also Thomas v. Cohen*, 2019 U.S. Dist. LEXIS 83723, *21 (N.D. Miss. May 16, 2019) ("Ussery's actions here arose out of the University's duties under Title IX to investigate the student's allegations. They were, therefore, related to a legitimate, employment-related objective, and cannot constitute tortious interference."). Accordingly, a work-related complaint filed against a co-employee must be more than false, it must be intentionally made to have the co-employee fired. *Wilson v. Topre Am. Corp*., 2018 U.S. Dist. LEXIS 212450, *6 (S.D. Miss. Dec. 18, 2018) ("The Complaint says

that Thomas reported the allegation against Wilson, and that Wilson claims the allegations is false . . . however, there is no allegation that Thomas intentionally made her complaint to have Wilson fired.").

Here, Dr. Cohly claims that his "suspension and termination arose from personal animus on the part of Dr. Kafoury, whose appointment as interim chair of JSU's department of biology had been questioned by Dr. Cohly." He further claims, without explanation, that President Bynum, Dr. Alo, and Dr. Walters "acquiesced to and assisted Dr. Kafoury in securing Dr. Cohly's termination."

As a threshold matter, Dr. Cohly's conclusory allegations against President Bynum, Dr. Alo, and Dr. Walters are clearly insufficient to state a claim for relief. Dr. Cohly's allegations regarding their involvement in his termination process are threadbare and conclusory, and he sets forth absolutely no allegations that any of them acted, or had reason to act, with malice.

Even as to Dr. Kafoury, when Dr. Cohly accuses Dr. Kafoury of personal animus, he still fails to support the essential elements of his tortious interference claim. First, Dr. Cohly's allegation that Dr. Kafoury had complained to his supervisor about Dr. Cohly performing research involving human urine without appropriate approval was related to a legitimate, work-related objective, and, therefore, cannot give rise to an inference of malice.

This court, too, notes that Dr. Cohly does not plead anywhere in his complaint that he had not been researching human urine without appropriate approvals. He takes issue with the evidence that supported Dr. Kafoury's recommendation, but he does not allege that Dr. Kafoury's assertions of urine research, lack of approval, and student involvement were false. Accordingly, this court is persuaded that  Dr. Cohly's tortious interference claim also fails to state a claim for which relief can be granted.

## VII.    <u>CONCLUSION</u>

Dr. Cohly was confronted with nearly all these same arguments over two years ago, and made the decision voluntarily to dismiss, rather than face a ruling by this Court. In his new filing, Dr. Cohly did not bring new claims or address his previously-identified deficiencies; he simply hoped for a better outcome in state court. Now, Dr. Cohly's claims, which stem from events that all occurred four to seven years ago, are barred by the applicable statute of limitation. Even if the Court looks beyond that threshold deficiency, the Due Process Clause does not guarantee Dr. Cohly lifetime employment, or a particular outcome on JSU's decision whether to terminate his employment. Even under Dr. Cohly's framing of the facts, he received all the process to which he was constitutionally entitled. This court finds that all of Dr. Cohly's claims lack merit and must be dismissed.

**SO ORDERED this the 27th day of March, 2023.**


**/s/HENRY T. WINGATE**            
**UNITED STATES DISTRICT COURT JUDGE**